CONSTANTINE A. BOWLING *vs.* THOMAS TURNER, JR., Officer of Registration of the Eighth Election District of Charles County, and J. SAMUEL TURNER, Clerk of the Circuit Court for Charles County.

*Residence of Voter—Change of Residence—Loss of Right to Vote by Removal—Effect of Failure to make Affidavit of Intention to Return—Motion to Dismiss appeal—Bill of Exception.*

Section 14 of the Act of 1890, ch. 573, provides that all persons who shall vacate and remove from the place of their actual abode or habitation within the State, and shall take up their abode or habitation out of the State, shall be conclusively presumed to have lost their residence in the State, unless at or about the time of such removal, or within ten days thereafter, they shall make affidavit before the clerk of the Circuit Court for the county from which they shall so remove, that they do not intend to change their legal residence, but that they have a fixed and definite purpose to return to the State on or before six months preceding the next election in November. A voter in Charles County, who had been occupying, with his family, a house which he rented by the month, removed in February, 1893, to Washington, and rented a furnished house by the month, which he occupied, with his wife and children, until the 1st of May of the same year, when he returned to Charles County to stay. He opened an office in Washington for the practice of law, which he continued to rent, and in which his office furniture remained. He kept the key of his house in Charles County, and left there all his furniture, and his spring

Bowling *vs.* Turner.

and summer clothing. The house was not occupied, but a neighbor was employed to go there morning and evening to look around and see if everything was right, and to feed the poultry. The voter at no time made the affidavit required by the Act. HELD:

1st. That having failed to make the affidavit expressly required by the Act, he was conclusively presumed to have lost his residence, and his name should have been stricken from the registry of voters.

2nd. That this presumption being made conclusive by law, no evidence could be introduced to contradict it.

In a bill of exceptions, it was stated under the hands and seals of the Judges that it was signed and sealed on the 31st day of October, which was during the trial term. The docket entries showed that it was filed on the 25th of November, which was after the expiration of the term. On a motion to dismiss the appeal on the ground that the bill of exceptions was not signed until after the lapse of the term, it was HELD:

1st. That this Court was bound by the record as it was certified to it, and could not permit it to be contradicted by affidavits.

2nd. That if erroneous in any respect, the proper mode of making the correction was by a writ of diminution; and on such writ the Court below would have corrected any errors that were capable of being corrected.

3rd. That although save under special circumstances, it is necessary that the exception should be signed during the term, there is no rule of practice by which it is vacated if not filed within that time.

APPEAL from the Circuit Court for Charles County.

The case is stated in the opinion of the Court.

*First Exception.*—The petitioner, Constantine A. Bowling, prayed the Court to strike out all the testimony of the witness, Sydney E. Mudd, tending to show his intention of returning to Charles County at the time of his leaving or thereafter, as testified to by him, and

that it be not considered by the Court, said testimony being incompetent and irrelevant.

*Second Exception.*—The petitioner prayed the Court .to grant the petition, and pass an order requiring that the name of Sydney E. Mudd be stricken from the duplicate registries of voters of the Eighth Election District of Charles County, as not being a duly qualified voter in said election district.

Both prayers were rejected, and the petition was dismissed, by an equally divided Court, (BROOKE and CRANE, J.,) and the petitioner excepted, and appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, McSHERRY, BOYD, and BRISCOE, J.

*John H. Mitchell,* and *John Prentiss Poe, Attorney-General,* (with whom was *L. Allison Wilmer,* on the brief,) for the appellant.

*Sydney E. Mudd,* and *Daniel R. Magruder,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

C. A. Bowling made a demand of the proper Registration Officer that the name of Sydney E. Mudd should be stricken from the registries of voters. On refusal by the Registration Officer, Bowling took an appeal to the Circuit Court for Charles County, by filing a petition as required by the Act of Assembly.

Sydney E. Mudd had been a voter in the Eighth Election District of Charles County since eighteen hundred and eighty-four. In February, eighteen hundred and ninety-three he rented a furnished house by the month in Washington, (D. C.,) which he occupied with his wife and four children until May the first of the same year. Before he occupied the furnished house in Washington,

he had been occupying with his family a house in Bryantown, Charles County, which he was renting by the month. He kept in the house at Bryantown all his furniture, and his spring and summer clothing, taking with him to Washington his books, desk, officer chair, a cot and an old mattress for a colored servant, and a map. In February he opened an office in Washington for the practice of law, which he still rents, and in which his office furniture still remains. He kept the key of the house at Bryantown, and employed a colored woman living in the neighborhood, to go to the house morning and evening to look around and see if everthing was right, and to feed the poultry. On May the first, eighteen hundred and ninety-three he returned to the house in Bryantown, which he has occupied ever since. He has not at any time made the affidavit prescribed by the Act of 1890, chapter 573, section 14.

The question of Mr. Mudd's residence must be determined by his removal to Washington in point of fact, and by the intent with which the removal was made. There is usually difficulty in ascertaining a man's intentions. There has been some vagueness and latitude in the methods by which the Courts have permitted the question to be investigated. In *Baptiste, et al. vs. De Volunbrun,* 5 *Harris & Johnson,* 86, the defendant being a resident of Saint Domingo, fled from the servile insurrection in that island, and arrived in New York in seventeen hundred and ninety-seven, and afterwards removed to the City of Baltimore in eighteen hundred and two. The case was decided at June Term, 1820, after the defendant had lived eighteen years in the City of Baltimore. The question was whether she had acquired a residence in Maryland. The Court said it is admitted that she (the defendant) "has constantly and uniformly declared her intention to return to her own country whenever circumstances will permit her to do

Bowling *vs*. Turner.

so with safety, and for that reason has never become a citizen either of this State, or any other of the United States. These declaration must be taken as a part of the *res gesta*, and are evidence of her intention, and with the fact that she has never become a citizen, are conclusive. She is a stranger in the country—an alien, without a fixed home—a sojourner wherever she goes, awaiting some favorable event, that may invite her back to the land from whence she has been driven.''

In other cases a distinction has been drawn between a *fixed intention* and a *floating intention*. The Legislature has seen fit to avoid the embarrassments and uncertainties attending the investigation of this question by making a change in the rule of evidence in the cases of persons applying for registration as voters. The fourteenth section of the Act of 1890, ch. 573, is as follows, so far as this question is concerned: "After the passage of this Act all persons who shall vacate and remove from the place of their actual domicile, abode, dwelling-place or habitation within this State, and shall take up a domicile, abode, dwelling-place or habitation out of this State shall be conclusively presumed to have lost their residence in this State, and shall in consequence thereof become disqualified to vote, unless at or about the time of such removal or within ten days thereafter they shall go in person before the clerk of the Circuit Court for the county from which they shall so remove, or before the clerk of the Superior Court of Baltimore City, if such removal be from said city, and shall make and acknowledge before him an affidavit declaring that notwithstanding such removal from their domicile, abode, dwelling-place or habitation, they do not intend thereby to change their legal residence, but that they have a fixed and definite purpose to return to this State on or before six months preceding the next suceeding election in November.'' Mr. Mudd did not lose the legal posses-

sion of the house in Charles County; it cannot be said that it was a vacant possession in any sense which implied a dereliction of his right of property. He had the right to return to it when he chose, and no one could occupy it against his will except in the character of a trespasser. But it is certain that he changed his visible dwelling-place and habitation when he occupied the house in Washington with his family. In the language of the statute which we have quoted, he took up a dwelling-place or habitation out of the State. He no longer inhabited the house in Bryantown, but he vacated it as a dwelling-place and removed from it. These were the palpable and unequivocal facts connected with the departure from Maryland. Now they could have been explained by showing the intent residing in his own mind when they took place. The statute allowed him to show by his own affidavit that he did not intend to "change his legal residence, but that he had a fixed and definite purpose to return to the State on or before six months preceding the next succeeding election in November." As he did not make this affidavit, the statutory result must follow; that is to say, he is conclusively presumed to have lost his residence, and is disqualified as a voter. The presumption being made conclusive by law, of course, no evidence can be introduced to contradict it. The Circuit Court, by an equal division, sustained the action of the Registration Officer. But it seems to us that they ought to have reversed it, and to have ordered Mudd's name to be stricken from the registries of voters. It has not been suggested that this statute is for any reason invalid. We will say, however that its validity was sustained in *Southerland vs. Norris,* 74 *Md.,* 326, and in *Sterling vs. Horner and Lankford,* 74 *Md.,* 573; and was fully recognized in *Lancaster vs. Herbert, &c.,* 74 *Md.,* 334, and in *McLane vs. Hobbs and Parsons,* 74 *Md.,* 166.

A motion has been made to dismiss the appeal, on the ground that the bill of exceptions was not signed until after the lapse of the term. It is stated in the exception under the hands and seals of the Judges, that it was signed and sealed on the thirty-first day of October, which was during the term. We are bound by the record as it is certified to this Court, and cannot permit it to be contradicted by affidavits. If erroneous in any respect, a proper mode of making the correction is provided. On a writ of diminution the Court below would have corrected any errors which are capable of being corrected. The docket entries show that the bill of exceptions was filed November twenty-fifth, which was after the expiration of the term. It is necessary, except under special circumstances, that the exception should be *signed* during the term; but there is no rule of practice that it is vacated if not *filed* within that time.

*Reversed, and remanded.*

