# JOHN A. GARRETT

## *vs.*

## BOARD OF REGISTRY.

*Right of Franchise—Removal from State.*

One who rents his house furnished to another for the summer months while his family are in a distant state, he in the meanwhile occupying a room in a city, outside the State but within a few miles of his home and, with his family, returning to such home at the end of the summer, does not thereby lose his right to vote in this State, under Code, art. 33, sec. 28, unless he makes an affidavit as therein provided.

*Opinion filed November 16th, 1921.*

Appeal from the Circuit Court for Montgomery County (PETER, J.).

Petition by John A. Garrett for an order directing James A. Keliker and others, constituting the Board of Registry for the Second Precinct of Seventh Election District of Montgomery County, to strike from the registration books the name of Harry C. Wilkinson. From an order dismissing the petition, petitioner appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*John A. Garrett* and *Robert Peter, Jr.*, for the appellant.

*Thomas L. Dawson,* with whom were *H. Maurice Talbott* and *Dawson & Dawson* on the brief, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Montgomery County, refusing to direct the Registrars of a precinct in that county to strike from the registration books the name of Harry C. Wilkinson, on the petition of the appellant.

The facts relied on by the petitioner, as the basis of his petition, are as follows:

Mr. Wilkinson and his family resided at Chevy Chase, in that precinct of Montgomery County. On the 15th of May, 1920, he rented his house furnished, reserving the attic, for four and a half months—the lease ending the first day of October, 1920. On the 15th of May he and his family left his house and went to a neighbor's home in that precinct, where they remained until on or about the 8th day of June following, when his wife and son went to Maine on her accustomed summer vacation, as the heat was, by reason of her health, very oppressive to her. She and her son boarded at a hotel. Mr. Wilkinson rented a room in an apartment house in Washington, D. C., which he occupied, taking his meals elsewhere, from the 8th of June until the first of October, 1920, with the exception of two weeks that he spent on a visit to his wife and son, and he returned from time to time to his home at Chevy Chase, where he had reserved the attic, in which he kept some of his personal effects, and to which he carried the key. On the first of October he returned with his wife and son to his home at Chevy Chase.

On the 12th of October, 1920, the name of Mr. Wilkinson was placed upon the suspect list of said precinct, and notice was served on him in accordance with the statute. In answer to the notice, he appeared before the Board of Registry to show cause why his name should not be stricken off. The board refused to strike his name off the books, and, on October 26th, 1920, the appellant filed this petition in the circuit court. After a hearing, the petition was dismissed by the lower court, and this appeal was taken from that order.

The petitioner relied on the portion of section 28 of article 33 of the Code which is as follows:

" * * * After the passage of act of 1901, chapter 2, all persons who shall vacate and remove from the place of their actual domicile, abode, dwelling place or habitation within this State, and shall take up a domicile, abode, dwelling place or habitation out of this State, shall be conclusively presumed to have lost their residence in this State, and shall in consequence thereof become disqualified to vote unless at or about the time of such removal, or within ten days thereafter," they shall make an affidavit as therein provided.

It is admitted that Mr. Wilkinson did not make that affidavit, and as may be inferred from our action in passing the *per curiam* order heretofore filed, we are of the opinion that it was not necessary for him to do so. The statute does not authorize the names of voters who fail to make the affidavit to be stricken off merely because they "shall vacate and remove from the place of their actual domicile, abode, dwelling place or habitation within this State," but it continues, "and shall take up a domicile, abode, dwelling place or habitation out of this State." Mr. Wilkinson cannot properly be said to have taken up a domicile, abode, dwelling place or habitation out of the State, within the meaning of that statute. He was a married man, living with his family in this State, and as his wife desired to go with her son to Maine for the summer months, he rented his house furnished, as above stated, and he and his family returned to their home in this State at the expiration of that short lease—he having gone to Washington, a few miles from his home, while they were away. If the construction placed on this statute by the appellant is correct, a man could not safely take his family to a summer resort out of the State for the summer, or for a shorter time, without losing his right to vote, as it would not

occur to voters that under such circumstances they were required to make the affidavit in order to continue on the registration books.  As his family went to Maine, but he did not, except for the two weeks he visited them, there certainly could be no presumption, conclusive or otherwise, that he had taken up his domicile, abode, dwelling place or habitation in Maine, and as his family did not go with him to Washington, there would seem to be no more reason to say that he took up his abode, etc., there.

It was apparently just such a case as frequently occurs, when an owner who has the opportunity of renting his house for a limited period, takes advantage of it and rents it while his family get the benefit of a temporary sojourn elsewhere, and he spends the time where it is most convenient for his business or employment.  There can be no doubt that, under the facts stated above, there was not the slightest evidence of any intention on the part of Mr. Wilkinson to give up his residence in this State and take up his domicile, abode, dwelling place or habitation in Washington, but the contrary appears from the evidence, and he did, in fact, actually return with his family before the next succeeding election, and even before his name was placed on the suspect list.

In *Bowling* v. *Turner*, 78 Md. 595, relied on by the appellant, Mr. Mudd opened an office in Washington for the practice of law, which he still rented, and in which his office furniture still remained, when the proceedings were commenced. He rented a furnished house in Washington, which he occupied with his wife and four children until he returned to Maryland.  The Court said that "it is certain that he changed his visible dwelling place and habitation when he occupied the house in Washington with his family.  In the language of the statute which we have quoted, he took up a dwelling place or habitation out of the State."  But no such conditions existed in this case, and there was no sufficient evidence from which he could be presumed to have lost his residence in this State.  In that case the Court referred to the usual difficulty

that existed in ascertaining a man's intentions as to his residence, and that the Legislature had passed the act to avoid the embarrassments and uncertainties attending the investigation of the question by making a change in the rule of evidence, but it was never intended by the Legislature, or by this Court, in passing on the statute, to make a conclusive presumption of change of residence out of such a condition of facts as we have here.

In *Southerland* v. *Norris,* 74 Md. 326, the voter removed to Washington and took his family to reside with him there. He rented a house in Washington, and gave up the one he had occupied in this State.

In *Lancaster* v. *Herbert,* 74 Md. 334, Lancaster entered the service of the general government, subsequently resigned, and was practicing law in Washington, where he had resided continuously with his wife and children in a rented house. Other cases might be cited, but those are sufficient to show the kind of facts which have been held to require a voter to make the affidavit referred to, but in no case that has been before this Court has it been held that it was necessary to comply with that statute under such facts as were proven by the petitioner and shown by this record, in order for the voter, who temporarily absented himself, as Wilkinson did, to remain on the books of registration.

We, therefore, by a *per curiam* order heretofore filed, affirmed the order of the lower court and we will only add that the appellant must pay the costs, and the judgment must be so entered.

*Order affirmed, the appellant to pay the costs*
*above and below.*