Lancaster *vs.* Herbert, &c.

*Judgment affirmed.*

(Decided 16th June, 1891.)

---

CHARLES C. LANCASTER *vs.* JOHN T. HERBERT, Registration Officer of the Fifth Election District of Charles County, and J. SAMUEL TURNER, Clerk of the Circuit Court.

*Residence of Voters—Bill of Exception.*

While a failure to make and acknowledge the affidavit required to be made, under the Act of 1890, ch. 573, sec. 14, by registered voters who had left the State prior to the passage of the Act, is conclusive evidence of an intention to abandon a residence in the State, the making of the affidavit is not conclusive evidence of a contrary intention, but the question of residence is still open for investigation.

A person who has not resided in the State for sixteen years, but during that time has had his domicile in the District of Columbia, is not entitled to be registered as a voter in the State, although he made the affidavit prescribed by the Act of 1890, ch. 573, sec. 14. he having failed to return to the State and take up his actual residence therein within the time prescribed.

The fact that a person is a part owner and manager of an estate in a county in the State, while having his domicile outside of the State, does not make him a resident of that county, nor does it tend to show that he has an intention, floating or fixed, to return there.

Where a bill of exception is not sealed by the Judge who signed it, the questions intended to be raised thereby, will not be considered by the Appellate Court.

Lancaster *vs.* Herbert, &c.

APPEAL from the Circuit Court for Charles County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, McSHERRY, and BRISCOE, J.

*Charles C. Lancaster,* for the appellant.

The provisions of section 14 and 19, of the Act of 1890, chap. 573, are unconstitutional. Section 14 of chap. 573, imposes additional qualifications to those prescribed by section 1 of Article 1 of the Constitution, by requiring all persons who, prior to the passage of the Act, shall have vacated or removed from the place of their actual abode, domicile, dwelling-place, or habitation within the State, and shall have taken a *domicile, dwelling-place, abode* or *habitation* out of the State, within thirty days after the passage of the Act to go before the clerk of the County Court, or Superior Court of Baltimore City, and make an affidavit, and after making such affidavit shall return to the State and take up their abode, domicile, or habitation, six months before the next election. It further provides that said affidavit shall not be admissible in evidence of the right of the person making the same to registration unless recorded within five days from the acknowledgment thereto. It further provides that the officers of registration shall require the production of such affidavit duly recorded, or a duly certified copy thereof.

Section 19, of chap. 573, requires the officers of registration to strike from the registry of voters the names of all persons who have left the State without making, acknowledging and recording the affidavit prescribed in section 14, or having made such affidavit, shall have failed to return to this State as provided in section 14, or who after having made such affidavit shall have failed to return as in said section prescribed.

The unconstitutional features of these two sections are:

1. They deprive the citizen of his constitutional right.

2. They impose additional burdens not prescribed by the Constitution.

3. They are impartial, and discriminate against those who, possessing the constitutional qualifications, may leave the State for business or pleasure, and have an actual dwelling-place temporarily out of the State.

4. They require the citizen temporarily residing out of the State, to furnish proof of his residence not required of other citizens of the State.

Could the Legislature have disfranchised all persons not actually residing in the State on the passage of this Act? It could not. Then it cannot impose such restrictions which practically have the same effect.

A statute would not be constitutional which should select particular individuals from a class or locality and subject them to peculiar rules, or impose upon them special obligations or burdens from which others· in the same locality or class are exempt. *Cooley Const. Lim.*, *section* 391, (*5th Ed.*); *Morris vs. Powell*, 125 *Ind.*, 281, 9 *L. R. A.*, 326, 25 *N. E. Rep.*, 221, where a similar statute is decided unconstitutional.

Wherever the Constitution has prescribed the qualifications of electors, they cannot be changed or added to by the Legislature, or otherwise than by an amendment of the Constitution. *Cooley Const. Lim.*, 753.

A statute which makes the enjoyment of a constitutional right depend upon an impossible condition, or upon the doing of that which cannot be legally done, is equivalent to an absolute denial of the right under any condition; the effect and not the language of the statute in such case must determine its constitutionality. *Davies vs. McKeeby*, 5 *Nev.*, 369; *State vs. Staten*, 6 *Cold.*, 233; *Rison vs. Far*, 24 *Ark.*, 161; *Hodgson vs. Milward*, 3 *Grant*, 406.

An Act of the Legislature which prescribes a qualification for an elector under its provisions, additional to those prescribed by the Constitution, as a previous residence of thirty days in the town where the elector offers his vote, is repugnant to the Constitution and void. *State vs. Williams*, 5 *Wis.*, 308; *State vs. Baker*, 38 *Wis.*, 71; *Monroe vs. Collins*, 17 *Ohio St.*, 665; *State vs. Symonds*, 57 *Maine*, 148; *Quinn vs. State*, 35 *Ind.*, 485; *Van Bokkelen vs. Canaday*, 73 *N. C.*, 198; *Commonwealth vs. McClelland*, 83 *Ky.*, 686; *Kineen vs. Wells*, 11 *N. E. Rep.*, 916; *Clayton vs. Harris*, 7 *Nev.*, 64; *Morris vs. Powell*, 125 *Ind.*, 281. A registration law must be impartial. *Daggett vs. Hudson*, 43 *Ohio*, 558; *State vs. Conner*, (*Neb.*), 34 *N. W. Rep.*, 499; *Cooley Const. Lim.*, 758; *Attorney General vs. City of Detroit*, 44 *N. W. Rep.*, 388.

Can the Legislature take away from an elector his right to vote while he possesses all the qualifications required by the Constitution? If so the legislative power is superior to the organic law of the State, and the Legislature, instead of being controlled by it, may mould the Constitution at pleasure; such is not the law. *McCafferty vs. Guyer*, 59 *Pa.*, 109.

The evidence in this case fails to show that the appellant had vacated his domicile or abandoned his residence in this State, with an intention to take up his residence or domicile elsewhere.

It does not follow as a legal conclusion, because he is residing in the District of Columbia for certain purposes, that he has abandoned his residence in the State, for the proof shows that he considers Rock Hall, Charles County, as "his home, domicile or residence," and is part owner thereof.

Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation, and there is no proof in the record to establish the *animus manendi* in the District of Columbia; neither declarations

of the appellant, the exercise of political rights, nor the payment of personal taxes. *Mitchell vs. United States*, 21 *Wall.*, 350.

While an individual can have but one domicile, he may have many residences. The residence may be constructive. The word "reside" is used in two senses—the one constructive, technical, legal; the other denoting the personal actual habitation of individuals. *Morse on Citizenship*, 99.

A party can have only one domicile. And if a party have two residences, he may elect which shall be his domicile. *Abington vs. North Bridgewater*, 23 *Pick.*, 170; *Brent vs. Armfield*, 4 *Cranch C. C.*, 579; *Frost vs Brisbin*, 19 *Wend.*, 11.

The conclusion might be different if appellant had no home, house or residence in the State, no latch-key or dwelling he could call his own, and paid no taxes. The Act in question was intended to cover such cases. It was aimed to remedy the abuse of those who left the State leaving neither home, dwelling, nor property, and returning from year to year to exercise the right of franchise.

Length of absence is no criterion as to whether such absence is temporary or permanent. *Harbaugh vs. Cicott*, 33 *Mich.*, 241; *Plummer vs. Brandon*, 5 *Iredell Eq.*, 190; *Cooley Const. Lim.*, sec. 600, (5 *Ed.*); *Story's Conflict of Laws*, sec. 44; *State vs. Minnick*, 15 *Iowa*, 123.

But if the proper *factum* is absolutely essential to the constitution of a domicile of choice, certainly, the proper *animus* is not less so. Hence, mere change of residence, however long continued, is not sufficient unless the proper *animus* be present. *Jacobs on Domicile*, sec. 135; *Risewick vs. Davis*, 19 *Md.*, 82; *Pennsylvania vs. Ravenel*, 21 *How.*, 103; *Chicago & N. W. R. Co. vs. Ohle*, 117 *U. S.*, 123; *Morris vs. Gilmer*, 129 *U. S.*, 315.

*Frederick Stone*, (with whom was *L. Allison Wilmer*, on the brief,) for the appellee.

Lancaster *vs.* Herbert, &c.

McSHERRY, J., delivered the opinion of the Court.

The name of Charles C. Lancaster, Esq., was stricken from the list of qualified voters of election district number five of Charles County in October, eighteen hundred and ninety. Mr. Lancaster thereupon appealed to the Circuit Court for that county, and the action of the officer of registration having been affirmed, the case has been brought into this Court for final review. On the fifth day of May, 1890, Mr. Lancaster made the affidavit required to be made, under *sec.* 14, *ch.* 573, *Acts of* 1890, by registered voters who had left the State prior to the passage of that Act. He attacks the constitutionality of the statute and claims that he is, in spite of its provisions, still entitled to vote in Charles County. In *Southerland's Appeal, ante p.* 326, some of the objections relied on here were considered and passed upon, and need not again be discussed. In that case the voter failed to make the affidavit prescribed by *sec.* 14, *ch.* 573, *Acts of* 1890, and it was insisted that he was notwithstanding that failure entitled to vote; whilst here the appellant made the affidavit and therefore urges (aside from the constitutional questions raised,) that his name should not have been stricken from the lists. Whilst the statute has declared that the failure to make the affidavit shall be conclusive evidence of an intention to abandon his residence in the State, under the circumstances mentioned in the section, it has not said that the making of the affidavit shall be conclusive evidence of a contrary intention. In other words, the making of the affidavit operates to prevent the application of the presumption raised by the 14th section, though when made it does not have, of itself, the effect of establishing a legal residence in Maryland, if the facts and circumstances surrounding and attending the removal and domicile abroad are sufficient to show that the affiant has, in fact, surrendered his residence in this State.

When the affidavit has been made the question of residence is still open for investigation; but when it has not been made that question is conclusively settled. When open, its solution must depend upon other competent and admissible evidence.

What, then, are the facts? Mr. Lancaster was born in Charles County, and resided there with his parents until he entered Georgetown College to complete his education. After graduating in 1874, he went to Washington City, studied law, entered the service of the General Government in the Treasury department and in the department of Justice, subsequently resigned and has been practising law ever since in Washington, where he has resided continuously with his wife and children in a rented house up to the time of the hearing in the Court below. He is a part owner and manager of an estate in Charles County. He occasionally went to the county on business connected with the management of that estate. For sixteen years he has not resided in Charles County. During that entire period of time his actual domicile has been in the District of Columbia. His and his family's home has been there, and there he has practised his profession. He identified himself and his interest, for the time being at least, with his new place of abode. All this he did voluntarily and from choice. He selected a place outside of the limits of the State for his home, and for the pursuit of his private business. If, under these circumstances, he is still a legal resident of Charles County, it can only be because he has now, and has always had since he left it sixteen years ago, an intention to return and take up his abode there at some future time. If this intention was and is merely a floating one, he is at once confronted with this difficulty, that his abode in Washington having become a place of fixed present domicile not in any way the result of a temporary absence for a particular purpose, it is sufficient to

Lancaster *vs.* Herbert, &c.

establish a residence there; and although there may be, and may always have been, a floating intention to return to Charles County at some future period, still that circumstance will not defeat the newly acquired residence or the rights and obligations which attach to it. *Ringgold vs. Barley,* 5 *Md.,* 193; *Story's Conf. Laws, sec.* 46; *Shaeffer vs. Gilbert,* 73 *Md.,* 66. If, on the other hand, the intention was a fixed one to return at a definite time, the statute prescribes (in cases to which it is applicable) that an actual return to the State, in addition to making the affidavit, shall be the evidence of the existence of such an intention; and Mr. Lancaster did not return to and resume his residence in Maryland. Under the statute no mere intention, however strong—and at best, when not made manifest by exterior acts which alone give it palpable form, it is but a revocable mental purpose—can, of itself without more, make a non-resident a resident of a locality different from that which is his actual, fixed, present domicile. He must do the things which the statute requires to be done—he must make the affidavit, and he must actually return to Maryland. There is nothing whatever in the record, apart from the appellant's own declarations with respect to his intentions, to show that he claims a legal residence in Charles County; and these declarations are not sufficient or competent, under the statute, to override the presumption that his actual domicile and his legal residence are in one and the same place—the District of Columbia. The fact that he owns an interest in an estate situated in Charles County, does not make him a resident of that county, nor does it tend to show that he has an intention, floating or fixed, to return there. His management of that property gives him no right to vote in this State when his domicile, dwelling-place, abode or habitation is beyond the limits of Maryland.

The bill of exceptions in the record was not sealed by the Judge who signed it, and therefore the questions

intended to be raised are not, in fact, before us; but we have thought it better to decide the case upon its merits, though the appeal will have to be dismissed because of the omission of the seal.

