(21 App. Div. 66.)

### PEOPLE v. PURDY.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

OFFICERS—ELIGIBILITY.

> Under the statute (Town Law, § 50) providing that "no county treasurer, superintendent of the poor, school commissioner, trustee of a school district or United States loan commissioner, shall be eligible to the office of supervisor of any town or ward in this state," no one can be validly elected supervisor unless he is "eligible" at the time of his election.
>
> Goodrich, P. J., dissenting.

Appeal from trial term.

Quo warranto by the people of the state of New York against Isaac Purdy. From a judgment in favor of the defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,. HATCH, and BRADLEY, JJ.

Isaac N. Mills, for the People.

Wilson Brown, Jr., for respondent.

CULLEN, J. This action is a quo warranto to oust the defendant from the office of supervisor of the town of North Salem. At an election held on the 31st of March, 1896, the defendant was elected to that office, having received a majority of the votes cast. No attack is made on the regularity of that election or its result. The defendant's title to office is assailed on the sole ground that at the time of his election he was disqualified, under the statutes of this state, from being elected to the office. The statutory provision involved .is section 50 of the town law, and is as follows:

"Every elector of the town shall be eligible to any town office, except inspectors of election shall also be able to read or write. But no county treasurer, superintendent of the poor, school commissioner, trustee of a school district or United States loan commissioner, shall be eligible to the office of supervisor of any town or ward in this state."

At the time of his election the defendant was a trustee of a school district in the town of North Salem. Upon his election he resigned the office, and qualified as supervisor. The sole question presented by this case is whether the defendant was incapacitated from election to the office of supervisor while a school trustee, or only incapacitated from holding that office. The determination of this question depends on the definition to be given to the word "eligible." The question also is or may become one of the greatest importance. The term "eligible" is found in the constitution of the United States with reference to the qualification requisite for the president, and is frequently used in the various state constitutions as prescribing the qualifications for public office,. especially with reference to age. The constitutions of at least 26 states declare that no person shall be "eligible" to the office of governor of the state except on the possession of certain qualifications,. and in 22 of these one of the qualifications is that he shall have reached the prescribed age. If "ineligible" means incapable of being elected. or appointed to office, then the officer must possess the qualifications at the time of his election or appointment; but, if "ineligible" means only disqualified from holding office, then, if the person elected or appointed possessed the requisite qualifications at the time of the commencement of his official term, his election or appointment would be valid. The determination of the question is also not wholly free from doubt. It is unquestionable that etymologically the meaning of "eligible" is "capable of being chosen," and therefore denotes a condition existing at the time of choosing, whether by election or appointment. This is the accurate meaning of the term and the primary definition given by all lexicographers; but in some dictionaries a secondary definition is given of the word, as "legally qualified." It must also be conceded.

that often not only colloquially, but also in judicial opinions, the word is used in this latter sense. The question of the construction of the term has never directly arisen or been determined in this state. In the case of People v. Clute, 50 N. Y. 451, the statute did not use the word "eligible," but provided that "no supervisor or county treasurer shall be elected or appointed to hold the office of superintendent of the poor." The Sherwood Case (People ex rel. Sherwood v. State Board of Canvassers, 129 N. Y. 365, 29 N. E. 345) arose under the constitutional provisions as to the qualifications of members of the legislature. In the constitution the conditions of ineligibility are in express terms referred to the time of election. Therefore in neither case was the definition of "eligible" involved, nor do the opinions in those cases throw much light on the question. In the opinion of Judge Folger, in the earlier case, he uses "eligible" in a latitudinarian sense, for he speaks of the difference between an ineligibility to an election and an ineligibility to hold office. In the latter case, Judge Earle uses the word in its accurate and more restricted meaning. He writes: "The term 'eligible' relates to the capacity of holding, as well as to the capacity of being elected to, the office."

The question, however, has arisen in other states, and has been the subject of conflicting decisions. In Searcy v. Grow, 15 Cal. 118, the constitution of the state provided that "no person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under the state." It was held that the election of Grow, who was a postmaster at the time, to the office of sheriff, was not rendered valid by his resignation of his position as postmaster before the commencement of his term as sheriff. It was there said:

"The language is not that the federal officer shall hold a state office while he is such federal officer, but that he shall not, while in such federal office, be eligible to the state office. We understand the word 'eligible' to mean capable of being chosen; the subject of selection or choice. * * * But they could not designate or choose a man not eligible; i. e. not capable of being selected."

This decision was followed in subsequent cases in that state (Miller v. Board, 25 Cal. 93; People v. Sanderson, 30 Cal. 160; People v. Leonard, 73 Cal. 230, 14 Pac. 853), and also in the case of State v. Clarke, 3 Nev. 566. On the other hand, in Smith v. Moore, 90 Ind. 294, the constitution of the state provided:

"No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to an office of trust or profit under the state other than a judicial office."

In 1878 the appellant was elected justice of the peace for the term of four years, commencing November 29, 1878. On the 7th day of November, 1882, he was elected county treasurer, his term to commence on August 15, 1883. The time of his election was thus 22 days prior to the expiration of his term as justice of the peace. It was held that "eligible" meant "legally qualified," and that it had reference to the qualification to hold office, and not to the choosing or election to such office, and that, as his term of justice of the peace expired before the commencement of the term of county treasurer, his election was valid. Those are the only cases that I can find which bear on the precise point. The other cases cited in the text-books

are plainly distinguishable, and are of value only as they indicate the sense in which the judges employ the term "eligible." Territory v. Smith, 3 Minn. 240 (Gil. 164), decided that the officer must have the required residence at the time of his election. But this was prescribed in express terms by the territorial statute, and the definition of "eligible" was not involved or considered. State v. McMillen, 23 Neb. 385, 36 N. W. 587, seems to have been decided on the assumption that a candidate for an elective office must be an elector, and did not involve the interpretation of any constitutional provision on the subject, for there was none. Privett v. Bickford, 26 Kan. 52, provided that no person who had aided the Rebellion should be qualified "to vote or hold office until his disability should be removed by the legislature." The plaintiff, who had offended against the government, was elected sheriff. Subsequent to his election, his disabilities were removed, and it was held that he was entitled to the office. But the decision gives no color for the claim that the election of an ineligible person is valid. In the opinion it is said:

"This provision [referring to the constitutional provision mentioned] operates upon the capacity of the person to take office, rather than as a disqualification to be elected to an office. So the disqualification is to the holding of the office, and not to the election. There is a marked distinction between a person who is ineligible, or incapable of being elected, and one who may hold the office. If a person may hold the office, he may be elected while he is under disqualification; and, if he becomes qualified after the election and before the holding, it is sufficient. In the one case the disqualification strikes at the beginning of the matter,—that is, it prohibits the election of an ineligible candidate; in the other case the disqualification relates only to the holding of the office."

In State v. Murray, 28 Wis. 96, the relator, at the time of his election, was an alien, but was naturalized before the commencement of his official term. It was held that he was entitled to the office. In this case, also, there was no constitutional or statutory provision on the subject. The only bearing of the case is found in a single sentence of the opinion:

"In my judgment, it is not that a person who is not an elector only because of some disqualification which he has the power to remove at any time is thereby rendered ineligible to be elected to a public office for a term which is to commence at a future time, but it is that a person thus disqualified shall not be eligible to hold such office. Such disqualification does not relate to the election to, but to the holding of, the office."

This merely shows that the learned judge used "eligible" in the same latitudinarian sense in which Judge Folger indulged in the Clute Case.

The cases which assert that a candidate ineligible at the time of his election may subsequent thereto become qualified refer to Cushing's Law and Practice of Legislative Assemblies and the Practice of Congress as supporting the doctrine. Mr. Cushing thus enunciates the rule:

"In general, as these disqualifications are not derived from the personal character of the individual, or inflicted by way of punishment, they do not render him ineligible,—that is, incapable to be elected,—but prevent him from assuming the functions of a member until they are removed. But this depends upon the language used in reference to each particular disqualification, and the time to which it relates; * * * but where the following terms are

used, namely, 'shall be incapable of being elected,' 'shall be eligible to a seat,' 'shall be eligible as a candidate for,' 'shall be ineligible,' the disqualification relates to the time of the election." Section 78.

As to the practice of congress, it certainly does appear that John Y. Brown, of Kentucky, was elected a representative, and Henry Clay elected a senator, in each case, before he had reached the age prescribed by the constitution. These gentlemen were admitted to their seats in congress without question. The case of Henry Clay, however, probably proves too much; for, unless his biographers have fallen into error either as to the date of his birth or the time when he entered the senate, he not only had not reached the constitutional age when he was elected senator, but not even when he took his seat in the senate. It has undoubtedly also been the practice of congress to relieve from their disabilities, and admit to their seats, members who, on account of their participation in the Rebellion, had, at the times of their election, been constitutionally disqualified from being senators or representatives. But the constitution does not use the term "eligible" in prescribing the qualifications for either senators or representatives. Its provisions are: "No person shall be a representative who shall not have attained the age of twenty-five years;" "no person shall be a senator who shall not have attained the age of thirty years;" "no person shall be a senator or representative in congress * * * who * * * shall have engaged in an insurrection or rebellion." Within all the authorities and text writers, these provisions are only limitations on the qualifications for holding office, not on the capacity to be elected. This practice, therefore, is not controlling on the question involved in the present case.

Fortunately, in the constitution of this state, with the two exceptions of the age of the governor and the direction that certain judicial officers shall be counselors at law, it has not been left to the definition of words of doubtful meaning to ascertain what the limitations of that constitution are. As to members of the legislature, persons holding federal offices or offices under city governments either at the time of their election or for 100 days prior thereto are not eligible. The ineligibility of judges of the court of appeals and justices of the supreme court is enforced in an equally clear manner. They cannot hold any other office or public trust, and "all votes for any other than a judicial office given [them] by the legislature or the people shall be void." This renders them ineligible to election. As to the governor, the possibility that the candidate might reach the constitutional age intermediate between his election and the commencement of his official term probably is an argument in favor of referring this qualification to the time of holding office, rather than to the time of his election. But, on the other hand, such a construction would involve the result that persons might be elected judges of the court of appeals or justices of the supreme court who are not counselors at law, subject to the chance of their subsequent admission to the bar. Further, it appears to be the settled law of this state—settled probably not by any express decision where the question was directly involved, but by constant reiteration in judicial opinions (People v. Clute and People ex rel. Sherwood v. State Board of Can-

vassers, supra)—that votes for a disqualified candidate for public office, where the disqualification is known, are void. It is a little difficult to see how such a rule can obtain if a candidate may be disqualified at the time of election, and yet subsequently relieve himself from disqualification. On the whole, we conclude that the accurate and well-recognized definition of "eligible" is "capable of election or appointment"; that the weight of judicial authority, where the question has been directly presented, supports this definition, or, at least, is not sufficient to overthrow it; that judicial literature, while it affords some justification for the use of the term "eligible" in either sense, as "capable of being elected to office" or "capable of holding office," is certainly not so uniform as to warrant us, in the construction of a statute or constitutional provision, in departing from the strict meaning of the term, in the absence of anything in the context showing that it was used in a broader sense. It follows that the election of the defendant was invalid.

The judgment appealed from should be reversed, and judgment rendered for the plaintiff, with costs. All concur, except GOODRICH, P. J., dissenting.