ROBERT P. GRAHAM, SECRETARY OF STATE, OF STATE
OF MARYLAND,

*vs.*

GEORGE L. WELLINGTON ET ALS.

*The Secretary of State : official office of—.   Election Laws :
nominations; time of filing certificates; vacancies;
mandatory and directory provisions.*

The official office of the Secretary of State is at Annapolis.
                                                    p. 660

To comply with section 47 of Article 33 of the Code of 1912
(governing elections), requiring certificates of nomination to be
filed with the Secretary of State not less than 25 days, and with
the Board of Supervisors of Elections not less than 15 days
before the day of election, such nominations need not be filed
with the Secretary of State personally, but they should be sent
or delivered at his office at Annapolis, and the absence of the
Secretary of State from his office, or from the State, will not
prevent such certificates from being filed within the meaning of
the statute.                                        p. 660

But it does not follow that such a delivery to the Secretary
of State in person, in Baltimore or at some other place, if ac-
cepted by him, would not be a sufficient delivery.        p. 660

Where a statute requires an act to be done not less than a
certain number of days before a certain other date, the general

rule, in computing the time, is to include one day and exclude the other day, and not to include or exclude both days; but where the statute indicates that there must be so many *clear* days intervening, or when the statute requires so many days at least, both the days must be excluded. p. 660

In determining the effect of a failure to comply with the terms of a statute regulating elections, the preparation of ballots, what names can be placed on them, etc., the intention of the Legislature must be sought for. p. 661

In construing statutes, the intention to be sought for may be manifested either by express declarations, or by a consideration of the general scope and policy of the Act. p. 661

Courts should hesitate to declare elections invalid merely because some of the requirements of the statute in reference to preliminary matters have not been literally complied with, unless, by express declaration or by necessary implication, such acts are essential to the validity of the election. p. 661

The directions contained in section 47 of Article 33 of the Code, as to the time for filing certificates of nominations for political offices with the Secretary of State and the Supervisors of Elections are mandatory, and not merely directory. p. 667

When such certificates of nomination are filed too late to comply with the provisions of said section 47, they are "inoperative" within the meaning of section 51, and nominations to fill the vacancy may be made as provided in the latter section.

p. 669

But vacancies which exist by reason of there being no candidates for the offices at the primary elections are not embraced within the meaning of said section 51. p. 668

*Decided November 12th, 1913.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and . CONSTABLE, JJ.

*Edgar Allan Poe, Attorney-General,* for the appellant.

· *George R. Gaither* and *Charles J. Banaparte,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the lower Court, directing a mandamus to issue against the appellant, the Secretary of State, of the State of Maryland, requiring him to certify to the Boards of Supervisors of Elections of Baltimore City and of the counties, the nominations of the three appellees by the Progressive Party for the offices of United States Senator, Comptroller and Clerk of the Court of Appeals, respectively. The certificates of nomination were not filed with the Secretary until October 11th; but the agreed statement of facts made by the attorneys shows that the certificates were intended to be filed by him on Oct. 10th, 1913; the Chairman of the Progressive Party, however, believing that they should be placed in the hands of the Secretary personally, called up the personal office of the appellant by telephone, in Baltimore City, and received from a subordinate in that office the message that the Secretary was not within the State and would not return until October 11th, which was correct. No further attempt was made to deliver the certificates until the morning of the 11th, when they were delivered to the Secretary in person, and were the same day mailed to the Secretary's office in Annapolis. The nominations were made by the members of the State Central Committee of that body, who were authorized, by the delegates elected at a primary election in convention assembled by a resolution unanimously passed, to fill any vacancy which might or did exist in respect to the nomi-

nations of said party for the three offices—the members of
the committee having also been elected at the said primary
election.   There were no candidates at the primary election
for those nominations, and they were made by the committee,
under the provisions of the statute authorizing vacancies to
be filled which may exist by reason of there being no candid-
ates for said offices at the primary election as the rules and
regulations of the governing bodies of the respective parties
may or shall provide.   The certificates of nominations were
not before us, but no objection was made to them for any
reason other than because of the time at which they were
filed.   The Secretary of State, upon the advice of the Attor-
ney-General, refused to certify the nominations to the super-
visors because they were not filed as required by section 47
of Article 33 of the Code.   In referring to the several sections
of this Article, we will mean the Code of 1912, which must
be borne in mind, as many of the sections are numbered dif-
ferently in that Code from what they were in the original
Acts, and from those in the pamphlet issued by the Secretary
of State.

Section 47 is as follows: "Except in cases provided for by
section 51 and cases of special election to fill vacancies in
office caused by death, resignation or otherwise, such certifi-
cates of nomination shall be filed respectively with the Secre-
tary of State not less than twenty-five days, and with the
Board of Supervisors of Elections not less than fifteen days
before the day of election."

As the day of the election was November 4th, it will be
observed that the 10th day of October was "not less than 25
days before that time, unless either the 10th of October or
November 4th be counted, even if it be conceded that what
was done on the 10th of October was sufficient to permit the
Secretary of State to treat the certificates as filed that day.
But we cannot concur in the view that what was done by the
chairman on that day, as set out in the petition and stipula-
tion of the attorneys, was a compliance with the requirement
of the statute.   It does not require such a certificate to be

filed with the Secretary of the State personally, but it contemplates it being filed in his official office, which is at Annapolis, although, of course, we do not mean to say that if one be delivered to the Secretary of State in person in Baltimore, or at some place other than his office in Annapolis, and he accepts it, that would not be sufficient. These certificates should have been sent to or delivered at the office of the Secretary of State in Annapolis (where his official office is) and the absence of the Secretary from his office, or from the State, would not have prevented them from being filed within the meaning of the statute. Presumably some one would be there during office hours to receive them for the Secretary of State, and it is not shown or suggested that the office of the Secretary was closed by reason of his absence from the State throughout that day, or that there was no one there who could have received them. If such conditions ever exist, and a certificate of nomination cannot for that reason be filed in time, a wholly different question from the one now before us will be presented.

Being of the opinion that what was done by the chairman on October 10th was not sufficient to excuse him for not filing the certificates before October 11th, which was undoubtedly not within the time fixed by the statute, it is not necessary to determine whether filing it on October 10th would have been in time. It will not be amiss, however, to call attention to the terms of the statute, which are, *"not less* than twenty-five days * * * *before* the day of election."* While the general rule, in the computation of time, is to include one day and exclude the other, and not to include or exclude both, there are many decisions which hold that if a statute indicates that there are to be so many *clear* days, or that requires so many days *at least,* both are to be excluded. We will only refer to what was said in *Walsh, Trustee,* v. *Boyle,* 30 Md. 266 and 267, and without saying more on that subject, we will consider the effect of not filing the certificates until October 11th, which is the earliest day we can treat them as filed.

.In determining the effect of a failure to comply with the terms of statutes regulating elections, the preparation of ballots and who can be placed on them, as well as other matters connected with elections, the intention of the legislature must be sought for, and when ascertained followed: "This intention may be manifested either by express declaration, or by a consideration of the general scope and policy of the act," as was said by JUDGE BURKE in *Carr* v. *Hyattsville,* 115 Md. 545. Courts should undoubtedly hestitate to declare elections invalid merely because some of the requirements of the statute in reference to preliminary matters have not been literally complied with, unless they be declared by the Legislature to be essential to the validity of the election or be of such character as the Court can see they were so intended. But we are not now called upon to determine whether placing on the official ballots the names of those whose certificates of nomination were not filed by the time fixed by the statute could invalidate an election in other respects regular, and we do not want to be understood as intimating that such would be the result, but the real question before us is whether the Secretary of State, with whom the statute required certificates of nominations for such offices as these to be filed, not less than twenty-five days before the day of the election, can be required to certify to the Supervisors of Elections the names and descriptions of those persons specified in those certificates, although the certificates were not filed with him by the time fixed by the statute.

Section 48 of Article 33 requires the Secretary of State to certify to the Supervisors of Elections of each county and of Baltimore City the nominees for such offices as those before us, not less than eighteen days before the election. Sections 47 and 48 of Article 33 were in the original Act, (1896, Chapter 202), being there numbered sections 42 and 43, and are still just as they were originally passed in 1896, excepting in that Act section 42 provided that the certificates of nomination should be filed "respectively, with the Secretary of State, not less than *twenty* days, and with the Boards of

Supervisors of elections not less than *ten* days before the day of election." By the Act of 1900, Chapter 366, that section was amended, so as to provide that those to be filed with the Secretary of State should be filed not less than twenty-five days, but still left ten days as the time for them to be filed with Supervisors of Elections. Then by Chapter 133 of the laws of 1902 the section was amended to read as it now does. Those amendments show that the Legislature did not consider the time originally fixed sufficient. No change has been made in what was originally section 43 (now 48) since it was passed in 1896, and the fact that such amendments were made is a strong indication that the legislature intended to require the certificates to be filed not less than the number of days respectively mentioned before the day of election. If twenty-four or twenty days would in its judgment answer, the Legislature could have had no reason for amending the original provisions which it did at its second session after the original Act was passed.

Section 43 of Article 33 (section 38 of Act 1896) authorizes nominations to be made otherwise than by a convention or primary election, usually spoken of as independent nominations or those by petition, upon compliance with its requirements. If what is now section 47 is to be held so far directory as to authorize certificates of nominations to be filed at any time, provided they be in time to have them placed on the ballots, or at least in time to enable the Secretary of State to certify them not less than eighteen days before the election, then political parties and individuals can ignore the time fixed by the statute and consult their own convenience instead of obeying the requirements of the law. The Secretary of State may have, after the twenty-five days limit, prepared his certificates for the various Boards of Supervisors of Elections, but some political party or some individual or individuals could under the construction of the appellees still file such certificates of nomination and require him to certify them, regardless of the inconvenience or possible expense and confusion caused by the delay and of the fact that the Legisla-

ture manifestly deemed it important to have it known by the voters, as early as possible, who the nominees were.

If section 47 is to be deemed merely directory as to the certificates of nomination to be filed with the Secretary of State, it must be equally so as to those to be filed with the Supervisors of Elections. They are required by section 49, which was section 44 of Act of 1896, to publish at least eight days before the election the nominations to office which have been filed with them or certified to them under the provisions of Article 33. The ballots are required to be printed, and in possession of the supervisors at least four days before election day, which necessarily requires some days in advance of that time, for the proper arrangement and printing of them. As very many nominations are often made, it is evident that the Legislature was wise in amending section 47, so as to fix fifteen instead of ten days for the filing of certificates of nomination with the supervisors. It would certainly be remarkable if political parties or individuals could ignore the provision fixing fifteen days as the time and file the certificates, for example, ten days before the election,—the time limit which the Legislature by the amendment clearly indicated was not in its judgment sufficient, and which the Court can itself see might not be for many, perhaps most, general elections.

What is now section 51 of Article 33 (section 46 of Act of 1896) also strongly indicates that the Legislature did not intend the provisions of section 47 to be merely directory. It makes provisions for filling vacancies and so much of it as we deem necessary to quote is as follows: "Should any person so nominated die before election day or decline the nomination, as in this article provided, or should any certificate of nomination be or become insufficient or inoperative from any cause, the vacancy or vacancies thus occasioned may be filled in the manner required for original nominations. If the original nomination was made by a party convention which had delegated to a committee the power to fill vacancies, such committee may, upon the occurring of such vacancies, pro-

ceed to fill the same; the chairman and secretary of such com-
mittee shall thereupon make and file with the proper officer a
certificate setting forth the cause of the vacancy, the name of
the person nominated, the office for which he was nominated,
the name of the person for whom the new nominee is to be
substituted, the fact that the committee was authorized to
fill vacancies, and such further information as is required to
be given in an original certificate of nomination." After
providing that the certificate shall be executed and acknowl-
edged in the manner prescribed for the original certificate, it
says that it "shall, except in case of a nominee dying, be filed
at least eight days before the day of election, and in cases of
either resignation or death shall be filed within six days after
the vacancy shall have occurred, and upon being so filed shall
have the same force and effect as an original certificate of
nomination." It then continues: "When such certificate shall
be so filed with the Secretary of State, he shall, in certifying
the nomination to the Supervisors of Elections, insert the
name of the person who has been thus nominated to fill a
vacancy in place of that of the original nominee; and *in case
he has already sent forth his certificate* he shall forthwith
certify to the supervisors the name and description of the
person so nominated to fill a vacancy," etc.

It is clear from those provisions that the Legislature be-
lieved and intended that the times mentioned in section 47
were imperative, for if a certificate could be filed after the
times named in 47, provided it be filed early enough to en-
able the officers of the law to perform their duties, then why
did the Legislature expressly make provision for the Secre-
tary of State inserting the name of the person nominated to
fill the vacancy in his certificate to the supervisors and pro-
vide for an additional certificate in case he had already sent
the regular one? If the certificate of nomination can be filed
after the time named in 47, there would be no occasion for a
vacancy by reason of the certificate being or becoming insuf-
ficient or inoperative, for it could be amended and refiled and
made sufficient and operative—certainly before the Secretary

had complied with section 48. Yet the Legislature provided
for such a vacancy, which could only have been on the under-
standing that section 47 drew the line which was to be ob-
served. Other provisions in section 51 might be cited to
show that the Legislature did not intend to allow the certifi-
cates to be filed after the times named in section 47, unless
they so expressly authorized.

We stated, in the *per curiam* order filed already, that the
committee of the Progressive Party could, under the author-
ity vested in it to fill vacancies, make the nomination under
section 51. The language of the statute—"should any cer-
tificate of nomination be or become insufficient or *inoperative
from any cause*"—seemed to us sufficient to justify that con-
clusion, as we deemed the certificates of nomination inopera-
tive because they were not filed in time, and our construction
is supported by a number of decisions of other States where
there are similar statutes. In *People* v. *Hartley,* 170 Ill.
370, S. C. 48 N. E. 950, the county clerk, who was the officer
with whom the certificate of nomination was to be filed, re-
fused to place the names on the ballot because it was not filed
thirty-days before the election. The Central Committee then
filled the alleged vacancies by nominating the same persons
for the offices in question. The statute provided that, "In
case a candidate who has been duly nominated under the
provisions of section six (6) of this Act die before election
day, or decline the nomination, as in this Act provided, or
should any certificate of nomination be held insufficient or
inoperative by the officer with whom they may be filed, the
vacancy or vacancies thus occasioned may be filled," etc. The
Court held that the refusal of the County Clerk to place upon
the official ballot the names of the candidates nominated by
the Convention because the certificate was not filed thirty
days before the day of election was in effect a holding that
the certificate of nomination was inoperative, and that vacan-
cies so caused could be filled by the Central Committee. In
*Bower* v. *Clemans,* 61 Kan. 129, s. c. 58 Pac. 969, the
statute was practically in the same language as that of Illi-

nois and the same conclusion was reached by that Court. In *Reese* v. *Hogan,* 117 Iowa, 603, s. c. 91 N. W. 907; *State* v. *Hogan,* 24 Mont. 397, s. c. 62 Pac. 683, and *State* v. *Clark,* 56 Neb. 584, s. c. 77 N. W. 87, the statutes were in effect the same as ours—providing that when certificates were insufficient or inoperative the vacancies could be filled—and the same conclusion was reached by the Courts of those States. It is true they did not determine whether the times named were directory or mandatory, but they in effect justified the action of the officers with whom the certificates were filed, in refusing to put the names on the ballots, because the certificates were not filed within the times named, as the decisions were based on the ground that vacancies had been thereby created. It could only be said that certificates of nomination had become inoperative, by reason of not being filed in time, on the theory that the time named in the statute fixed the latest date at which they could be filed, as manifestly if they could be filed after such time they were not inoperative.

It may be contended that such a construction of section 51 will enable political parties to avoid the requirements of section 47, but it is not likely that a political party will deliberately and intentionally render its certificates of nomination inoperative, or that its nominees would consent to such a course. It is difficult to see any advantage a party could obtain by postponing the filing of such certificates, especially as it can only get the names on the ballots by filling the vacancies under the terms of the statutes, which would result in additional and unnecessary trouble, and in many cases in useless expense. Certain it is that the original nominees would not be benefitted by having the certificates filed later than the times named in section 47, and it would be possible that others might be nominated in place of all or some of them.

But however that may be, the language of the statute is very broad—"insufficient or inoperative *from any cause*"— and the authorities we have found are all one way in the construction of such a provision. The object of the Legislature was to prevent political parties from being deprived of hav-

ing their candidates on the official ballot, and inasmuch as it had named the time within which the certificates of nomination must be filed, and then, as construed by us and other Courts, treated as vacancies the places not filled by certificates filed within such times, it must follow that the times named were not intended to be merely directory.

We have not thought it necessary to refer to the many decisions in this State and elsewhere on the general question when provisions in statutes shall be deemed directory and when mandatory, but we are of the opinion that the times named in section 47 must be complied with, in filing such certificates of nomination as are included in it. The general rule apparently is that statutory provisions in regard to the time of filing certificates of nomination are mandatory; 15 *Cyc.* 338 and 10 *Am. & Eng. Ency of Law,* 638 and 654, and cases cited in the notes. It is certainly safer and better to require such certificates to be filed by the times named in the statute than to leave it to the discretion of the officers with whom they are to be filed, to accept or reject them, as they may think it would be in time to enable them and other officers of the law to properly perform their duties. As the Legislature has been very liberal in providing for filling vacancies, there can be but little danger of the nominees of any political party having injustice done them by our construction of the statute.

It was, however, contended on the part of the appellees that section 47 did not apply to them, as they were nominated under the provisions of what was originally section 160K, now section 188 of Article 33, as amended by Chapter 2 of the Acts of 1912. That section concludes as follows: "Any vacancy which may exist in respect to any office, delegates to conventions or position named in this sub-title occurring after the returns have been canvassed and finally announced, or which may exist by reason of there being no candidate for the same in any such primary election or otherwise, shall be filled as the rules and regulations of the governing bodies for the respective parties in the counties, city or State, may now

or shall hereafter provide." That section is a part of the sub-title, "Primary Elections," added to Article 33, title "Elections." As originally enacted Ch. 737, Laws of 1908, p. 103, the provision was simply, "Any vacancy which may exist in respect to any office or position, after the returns have been canvassed and the final result announced, shall be filled," etc. By Ch. 741, Laws of 1910, p. 113, the Act of 1908 was repealed and new sections enacted in place of those in it, and section 160K concluded with the provision quoted above. Then by Chapter 2 of laws of 1912, a number of those sections were amended, including 160K, but the provision as to vacancies was continued as it was adopted in 1910. The clause added, with which we are now concerned, is, "Any vacancy * * * which may exist by reason of there being no candidate for the same in any such Primary Election." The provision for filling vacancies was a wise, and perhaps necessary one by reason of the fact that prior provisions of the primary election laws were so broad and comprehensive that there would have been some question as to the right to fill at least some of the vacancies in any way other than by primary elections. The primary election law did not fix the times when certificates of nominations should be filed, but section 160K (188 of Article 33) provides that "All nominations to be made by such conventions shall be made in like manner and certified as required by this article." When then we turn to other parts of Article 33 we find section 47 which requires certificates of nomination to be filed at the times named "Except in cases provided for by section 51 and cases of special election to fill vacancies in office caused by death, resignation or otherwise." Manifestly, vacancies which exist by reason of there being no candidates for the offices at the primary elections are not embraced in section 51, and they are the vacancies which the appellees contend existed. No reason was suggested why the certificates of the original nominations could not have been prepared and filed within the time fixed by section 47, and such as these could ordinarily be easily so prepared and filed, but however that may be, in

our judgment as section 160K fixes no time and the certificates did not come within the exceptions to section 47, the time fixed in the latter applied to them.

Inasmuch as the Attorney-General and the attorneys for the appellees requested us to determine whether the committee of the Progressive Party could still make nominations for these offices and file certificates of the same under section 51, and as the time was so short that it would have been difficult, if not impossible, to have had a decision by us early enough to be of use, after the committee had made nominations and filed the certificates under section 51 and the question had been passed on by the lower Court, we expressed our views on that subject in the *per curiam* order, and as we have said above, we were of the opinion that the committee could proceed under section 51. The conclusion reached by us, therefore, did not prevent this party from having nominees for the three offices on the official ballot, and we can see no reason to fear that our construction of section 51 will lessen the importance of section 47, but if it does the Legislature can make such changes as it deems proper to avoid that result hereafter.

For the reason stated the order directing a mandamus to issue was reversed and the petition dismissed by the *per curiam* order heretofore filed.