A. PARKS RASIN, JR., ET AL. v. HOWARD S.
LEAVERTON, BOARD OF SUPERVISORS
OF ELECTIONS
HOWARD S. LEAVERTON, SUPERVISORS OF
ELECTIONS *v.* A. PARKS RASIN, JR., ET AL.

[Nos. 80 and 81, October Term, 1942.]

*Decided October 29, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, MARBURY, and GRASON, JJ.

*Simon E. Sobeloff* for A. Parks Rasin, Jr., and others.

*Edward A. Smith* for Howard S. Leaverton and others.

BOND, C. J., delivered the opinion of the Court.

To avoid delay in the decision of questions in these cases which need to be settled before the election on November 3 of this year, the orders appealed from were affirmed by orders of this court passed as soon as the court reached its conclusions, and the statement of reasons for those conclusions was deferred until an opinion at length could be prepared. The opinion now follows.

The two cases, argued as one, arose from controversies over the placing of names of candidates for election upon the ballots in Kent County. The lower court denied the petition of Mr. Rasin for the writ of mandamus to compel the Board of Supervisors of Elections for the county to place his name on the ballot as a candidate for the office of State's Attorney, because he was found to lack the constitutional qualification of two years' residence in the county. "No person shall be eligible to the office of State's Attorney," reads Section 10 of Article V of the Constitution, "who has not resided for at least two years in the county * * * in which he may be elected." And from the dismissal of his petition Mr. Rasin appeals in the first case. In the second case the lower court ordered the writ issued to compel placing on the ballots the names of candidates nominated by the Republican State

Central Committee for the various local offices, under Article 33, Section 94 of the Code, 1939, after a previous effort at nomination had failed because of the use of a defective form of certificate.

The Board appeals in that case.

The facts respecting Mr. Rasin's residence are that he had been born in the county, and in the year 1932 had gone to Baltimore City, and lived there, primarily to earn money to educate himself, and to receive his education. In 1936 his name was stricken from the registration books in the county, and in 1938 and 1940 he registered and voted in the city. Necessarily in registering he took an oath that he was a resident of Baltimore City. Code, 1939, Art. 33, Sec. 19. During all this time he visited Kent County with frequency, and his intention, he states, was to retain his residence there; in Kent County he paid taxes, kept clothing and other possessions, and had the title to his automobile issued. He was admitted to the bar of the State in March of 1941, and he opened an office in Chestertown, Kent County, in August, 1941, and lived there subsequently. In July of 1942, he obtained a removal certificate from the Supervisors of Elections of Baltimore City for registration in Kent County. Code, 1939, Art. 33, Sec. 54.

There is no escaping the fact that the petitioner lived in Baltimore City during nine years before August, 1941, and meanwhile had at most an intention to return to the county only at some indefinite future time. He cherished the idea that he would retain his connection with the county, but he seems not to have continued his residence there. *Lancaster v. Herbert,* 74 Md. 334, 340, 22 A. 139. The requirement in the Constitution of residence for political or voting purposes is one of a place of fixed, present domicile. *Howard v. Skinner,* 87 Md. 556, 559, 40 A. 379, 40 *L. R. A.* 753; *Thomas v. Warner,* 83 Md. 14, 20, 34 A. 830; *Wagner v. Scurlock,* 166 Md. 284, 291, 170 A. 539. Uninterrupted dwelling in the city for nine years would alone seem much more than a temporary sojourn there, or a temporary absence from home. It

was not, within the ordinary meaning of the constitutional phrase, residing in the county. And his registering and voting in Baltimore City, while not in itself conclusive evidence of residence there (*Wagner v. Scurlock, supra*), is at least strongly persuasive and confirmatory, especially as the registrant must have taken an oath that he was in fact a resident. The oath is not a meaningless form. *Harrison v. Harrison,* 117 Md. 607, 613, 84 A. 57; *Wagner v. Scurlock, supra.* For these reasons this court has concurred with the trial court in the conclusion that the petitioner would not, at the time of the election, possess the qualification of having resided for at least two years in the county.

He construes the constitutional requirement to be, however, not that he must have resided in the county two years prior to the time of election, but that he must have resided in the county so long prior to the time of taking office, that the eligibility specified is an eligibility to hold office rather than to be elected to it, and that consequently he may be elected now and defer entering upon the office until his residence in the county has been prolonged to two years. This contention finds support in decisions in some jurisdictions. 88 *A. L. R.* 813. But it has not been the construction adopted in Maryland. In the early General Court case of *Hatcheson v. Tilden,* 4 Har. & McH. 279, a constitutional requirement that "no person to be eligible to the office of Sheriff for a county, but an inhabitant of the said county * * * having real and personal property in the State above the value of 1,000 pounds current money" (Const. 1776, XLII), was held to mean that he must have it when the votes are cast. At that time the voting continued over three days, and the candidate who was given the largest number of votes obtained the property only by the third day; and it was held that he was required to have it at the time he was voted for, and that "the plaintiff can only be entitled to such votes as were given after he received the necessary qualifications, all votes in his favor previous being illegal and void."

That case was referred to as an authority as lately as 1910, in *Hummelshime v. Hirsch*, 114 Md. 39, 55, 79 A. 38. Hummelshime had received a majority of votes at an election of members of the City Council of Cumberland, but was, contrary to a requirement in the city charter, in arrears in payment of his taxes until late on the day of the election, and Hirsch applied for the writ of mandamus to trý his title to office. It was held that the candidate was disqualified, the court considering that the obvious purpose of the provision, and of that requiring candidates for nomination at the primary election to swear that they were qualified to hold office, was to secure to voters or electors the right to vote for those qualified under the charter.

A similar charter provision was held to require the qualification to exist at the time of election in *Spitzer v. Martin*, 130 Md. 428, 433, 100 A. 739. And the court cited as authority the case of *People v. Purdy*, 21 App. Div. 66, 47 N. Y. S. 601, 602, in the Appellate Division, New York, in which a requirement that "no * * * trustee of a school district * * * shall be eligible to the office of supervisor of any town or ward in this State," was held to exclude from the latter office one who had been a trustee of a school district, and after receiving a majority of votes for the new office resigned to qualify himself for it. On further appeal, 154 N. Y. 439, 442, 48 N. E. 821, 822, the New York Court of Appeals observed, "A public statute relating to the qualifications of public officers should never be so construed as to produce inconvenience, or to promote a public mischief, or to render the action of the voters at the election abortive. It should, in every case when the language will fairly permit, be given such construction as to enable the electors to act intelligently, and to accomplish with as much certainty as practicable the purpose that they may have in view. If it be held that the disqualification of the statute applies only to the holding of the office, and not to the capacity of the candidate for election, then the electors can never know, when voting for a school trus-

tee for the office of supervisor, whether they will succeed in filling the office or not. Though the action of the electors may be unanimous, the result must depend upon the future action of the candidate himself. * * * The statute, we think does not contemplate that a person who is disqualified to hold the office may nevertheless be lawfully elected, upon the chance that subsequently he may by his own act, or by the happening of some event, remove the disqualification, and thus become entitled to fill it." This reasoning seems to us conclusive.

It is argued that the absence of the words "preceding the election," from the requirement of residence in the clause now considered (Art. V, Sec. 10), and the presence of those words in statements of qualifications for other offices under the same Constitution, evidence an intention that previous residence is not required of candidates for State's Attorney. But the Constitution of 1867 does not always possess the consistency that the argument supposes. In *Benson v. Mellor*, 152 Md. 481, 137 A. 294, this court held that all officers whose tenures are not limited to specified times hold their offices until they are superseded by duly commissioned and qualified successors, although such an extension was specifically provided for some officers only, not for all. However cogent the argument now made might be in other situations, it is not sufficient to overcome the inference of intention which the court finds in the ordinary meaning of the requirement of eligibility, and in the consequence of the contrary construction pointed out in the case quoted.

For these reasons the order of the trial court with respect to the eligibility of A. Parks Rasin, Jr., alone was affirmed. This ruling, of course, excludes him from the nominations by the State Central Committee, the procedure in which is in question on the second appeal.

It is agreed by the parties that on August 22, 1942, there having been no previous nominations of Republicans for the positions, the State Central Committee of that party applied to the Board of Supervisors of Elec-

tions for a form for certifying under Section 90 of Article 33, of the Code, 1939, the nominations of the appellees for the seven offices or group of offices, of State's Attorney, member of the House of Delegates, Treasurer of the County, Register of Wills, County Commissioners, Delegates to the State Convention, and members of the State Central Committee, and using the only form the Board had, certified the nominations within the time specified in Section 90, forty days before the election on November 3, 1942, Code, 1939, Art. 33, Sec. 305 (a). But the form used was appropriate only for nominations by the separate individuals themselves, which are required to be filed within forty-five days before the primary election. Code, 1939, Art. 33, Secs. 235 and 305 (d) ; Acts of 1941, Chap. 780. The certificates filed were therefore defective, and the Board rescinded its action taken on them, and refused admission of the names to the ballots. The State Central Committee, having power to fill vacancies on its ticket, thereupon filed on September 30, 1942, new certificates, but these, too, were rejected as not authorized by law. Section 94 of Article 33 of the. Code, 1939, provides for the filing of vacancies on party tickets by this process when any previous certificate of nomination shall "be or become insufficient or inoperative from any cause," and the action of the State Central Committee is to be supported under this section if at all.

The words of the section, on their face, clearly include the authority. The previous certificates were in fact insufficient and inadequate from the cause stated. For the Board it is contended that a contrary intention is disclosed by the history of the section, that it was adopted originally in the course of an effort to stop a practice of each political party to delay filing certificates of candidacy to await nominations of the opposing party, and to select its own candidates to meet those particular individual opponents. Acts of 1927, Chap. 240; Acts of 1931, Chap. 239; *Graham v. Wellington*, 121 Md. 656, 89 A. 232. If, the argument is, a party were permitted to continue this practice under Section 94 by filing previ-

ously insufficient or inoperative certificates deliberately, the purpose of the improvement in the law might easily be evaded, and we are not permitted to suppose the Legislature left open that method of evasion.

This court, however, concurs with the trial court in the conclusion that the breadth of the statutory provision cannot be so restricted. It was an argument dealt with in *Graham v. Wellington, supra,* 121 Md. at page 666, 89 A. 232, and there found untenable. The nominations here were attempted, and would have been completed except for the mistake in attempting to make them by certificates in the wrong form. They were well within the description of certificates insufficient and inoperative for the reason stated, and it would seem contrary to the purpose of the election laws to deny admission to the ballot of the candidates named, excepting Mr. Rasin, because of the mistake. For these reasons the order of the trial court with respect to the certificates for nomination of the appellees other than Mr. Rasin in the second case was affirmed.

*Order affirmed, with costs.*